COMMONWEALTH of Pennsylvania, Appellee

v.

**Randy Allan PETERS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 3, 2006.
Filed Jan. 10, 2007.

Michael R. Hadley, Oil City, for appellant.

Schellart H. Los, Asst. Dist. Atty., Franklin, for the Com., appellee.

BEFORE: HUDOCK, ORIE MELVIN and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Randy Allan Peters (Appellant) appeals from the judgment of sentence entered following his conviction for driving under the influence (DUI).[1] Appellant claims that the trial court erred in denying his motion to suppress because his arrest was conducted in violation of the Municipal Police Jurisdiction Act (MPJA). *See* 42 Pa.C.S. §§ 8951–8954. For the reasons that follow, we conclude that Appellant's arrest did not violate the MPJA, and even if it did, it would not be appropriate under the facts of this case to apply the exclusionary rule to suppress otherwise admissible evidence. Accordingly, we affirm.

¶ 2 After presiding over the pre-trial hearing, the Honorable H. William White,

P.J., set forth the following findings of fact:

Brett Hill is a police officer with the Sugarcreek Borough Police Department. He had substantial training as a police officer, to include the Academy. He has approximately 60 DUI arrests prior to this particular arrest.

On October 8, 2003, at about 10:15 p.m. he was on patrol, received a call of a vehicle hitting a telephone pole and then leaving the scene at 149 Meadville Pike. Meadville Pike is within the [Borough] of Sugarcreek. The Officer went immediately to the scene, got there about 10:20 p.m. At the scene he observed the telephone pole. He observed tire marks in the mud. He observed debris, which is in evidence as Exhibit 2, at the base of the telephone pole. He talked to two residents at the scene. Marcy Aiken at 149 Meadville Pike, which was the house and address where the collision with the telephone pole occurred, and Tex Terry, who the officer knew to be a volunteer fireman with the Sugarcreek Fire Department. Both described a white compact pick-up truck struck the telephone pole. The driver and passenger got out of the vehicle, inspected the front of the vehicle and the pole, got back in the vehicle and drove away.

Based on what the witnesses told him, the Officer's best estimate of the time of the accident was 10:15 p.m. Officer Hill noted the pole itself was cracked and it would have to be replaced. It was not displaced, but broken. He also noted at the scene that there was a mailbox which was destroyed and a street sign which had been damaged. The street sign was bent at the post.

1. Appellant was charged under the former DUI law. *See* 42 Pa.C.S. § 3731.

The Officer stayed at the scene, talked to the witnesses, was on radio with his dispatch, and collected pieces of plastic. Franklin Police began looking for the vehicle on the description and Officer Hill said that he was to begin looking in the Sugarcreek Borough area. Officer Hill at that point was investigating a hit-and-run accident.

Eventually, the Franklin officers located the vehicle that met the description of the vehicle on Howard Street. The Officer testified Howard Street is a street which is within the city of Franklin approximately one-half mile distance from the site of the accident. It would be about the third block into the city of Franklin from Sugarcreek as one would leave Sugarcreek on the Meadville Pike which is where the accident occurred.

The Officer proceeded to Howard Street where the vehicle was located. He noted mild damage on the vehicle. There was damage to the passenger side front of the bumper, some damage with parts missing from the turn signal or equivalent marking lights in the front, a dent on the panel on the passenger's side which he could not state was fresh. He noticed a spider mark on the windshield on the passenger side. The Officer checked the damage to the plastic on the vehicle and matched pieces that he had picked up at the scene with pieces missing from the motor vehicle. Officer Hill noted on the damaged vehicle that the front passenger tire was flat and that there was a low tread indicator on the rear tread of the pick-up truck. On cross examination the Officer acknowledged that he could not state that the spider mark on the passenger side windshield was fresh damage.

The Officer estimates his time at Howard Street inspecting the vehicle was about 10:45 to 11:00 o'clock p.m. Sometime shortly after 11:00 o'clock p.m. the Defendant called in and stated he believed he was the person the police were looking for. He reported that a friend told him that he had heard on a police scanner that they were looking for him for this accident.

Franklin Police were at the Defendant's residence first. Officer Hill interviewed the Defendant commencing at 11:15 p.m. Defendant was placed under arrest at 11:35 p.m. The Defendant lives on Elk Street in the city of Franklin. Defendant told the police and the arresting Officer that initially he swerved to miss a dog, then a bunny, and then that he swerved to miss a dog pursuing a bunny. Defendant did tell the Officer that he had about five beers. He did not state where he had been drinking. Defendant also told the Officer that he had a drink after the collision and that he had started drinking about 6:00 o'clock p.m.

. . .

The Defendant did admit to the Officer that he parked his vehicle on Howard Street by Titusville Fabricating. The Defendant denied having a passenger with him, stating that he had been by himself. The Officer testified that he did administer a PBT. He did not conduct a standardized field sobriety test. Defendant was placed under arrest, taken to UPMC–Franklin Campus for a blood test. It took approximately five minutes to get to the hospital. The Defendant was placed under arrest at 11:35. The BAC test came back .09 percent.

Trial Court Opinion (T.C.O.), 8/10/04, at 1–5. Based on the foregoing facts, the Commonwealth charged Appellant with DUI.

¶ 3 Appellant filed a motion to suppress all evidence obtained as a result of his arrest, which the trial court denied. And

at the conclusion of a jury trial, Appellant was found guilty of DUI. This was Appellant's second DUI conviction, and consequently, the trial court sentenced him to a term of imprisonment of no less than 60 days and no more than twenty-four months, minus one day. Appellant filed a post-sentence motion, which the court denied. Appellant then filed this appeal raising the following question for our review:

Whether the extraterritorial arrest of the Defendant, by the Sugarcreek Borough Police Department while in the City of Franklin, was unlawful as the Sugarcreek Borough Police were not covered by any of the sections of the Municipal Police Jurisdiction Act (42 Pa. C.S. § 8953), the Officer lacked probable cause of an offense prior to leaving his jurisdiction, no offense occurred in the Officer's presence and when the Defendant was found outside Sugarcreek's jurisdiction he was not in "any hospital or other medical treatment" facility as required by 75 Pa.C.S. § 3731(c)?

Brief for Appellant at 4.

 ¶ 4 Initially, we note that Appellant is challenging the trial court's denial of his motion to suppress. Our standard for reviewing an order denying a motion to suppress is as follows:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hughes,* 908 A.2d 924, 927 (Pa.Super.2006).

 ¶ 5 In the case before us, the court determined that Officer Hill had authority to arrest Appellant because Officer Hill had probable cause to believe that an offense had been committed in Sugarcreek Borough, and he was in hot and fresh pursuit of Appellant for commission of this offense when the arrest occurred. The pertinent provision of the MPJA states the following:

§ 8953. **Statewide municipal police jurisdiction**

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . .

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2). The courts of this Commonwealth have consistently held that in applying the MPJA in a manner that effectuates its purpose, we should construe its provisions liberally.

This Act is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice. *Commonwealth v. McHugh,* 413 Pa.Super. 572, 605 A.2d

1265 (1992). Specifically, one of the principle objectives to be obtained by this Act is to promote public safety while maintaining jurisdictional police lines. *Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135 (1991). However, as our Supreme Court stated in *Merchant,* "the General Assembly recognized that constructing impenetrable jurisdictional walls benefited only the criminals hidden in their shadows." *Id.* at 169, 595 A.2d at 1139.

*Commonwealth v. Eisenfelder,* 444 Pa.Super. 435, 664 A.2d 151, 153 (1995).

¶ 6 Our inquiry necessarily begins with the offense that was committed in Officer Hill's primary jurisdiction, Sugarcreek Borough. As the facts above indicate, Officer Hill did not observe the offense himself, and therefore, whether Officer Hill possessed probable cause that an offense was committed rests upon the substance of the eyewitness reports and evidence obtained during Officer Hill's investigation of the crash scene. Initially, Officer Hill was responding to a report that a vehicle had hit a telephone pole and that the driver had left the scene without reporting the incident or identifying himself. Upon arriving at the accident scene, Officer Hill observed a cracked telephone pole, a destroyed mailbox, and a damaged street sign. He also spoke with two witnesses who reported that a white compact pick-up truck had veered off the road and struck the telephone pole. These witnesses reported that the driver left the scene without leaving any identifying information.

¶ 7 Pursuant to 75 Pa.C.S. § 3745, it is a summary offense for a person to leave the scene of an accident without reporting it where there is damage to unattended property. In pertinent part, the statute states:

### § 3745. Accidents involving damage to unattended vehicle or property

(a) **General rule.**—The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3745(a). Clearly, the driver of the white pick-up truck did not comply with this law, and therefore, Officer Hill possessed probable cause to believe that a violation of 75 Pa.C.S. § 3745 had occurred.

¶ 8 Under the MPJA, Section 8953(a)(2) first requires that an officer have probable cause to believe that "any offense" has been committed. There is no limitation on the level or type of the offense, and thus, we conclude that Officer Hill met the first requirement of Section 8953(a)(2) even though the suspected violation was only a summary offense. *Compare* 42 Pa.C.S. § 8953(a)(2), *with* 42 Pa.C.S. § 8953(a)(5) (which only bestows law enforcement power and authority upon an officer in cases where the officer is on official business and observes an offense that "is a felony, misdemeanor, breach of the peace or other act

which presents an immediate clear and present danger to persons or property"), *and* 42 Pa.C.S. § 8953(a)(6) (which only bestows such power in cases involving a felony).

¶ 9 We turn next to the hot and fresh pursuit requirement of 42 Pa.C.S. § 8953(a)(2). In *Commonwealth v. McPeak*, 708 A.2d 1263 (Pa.Super.1998), this Court considered the applicability of the MPJA under similar facts where a City of Philadelphia Police Officer arrested the defendant in neighboring Cheltenham Township pursuant to the officer's authority under Section 8953(a)(2). In *McPeak*, two eyewitnesses observed the defendant strike two vehicles as he drove down a road in the City of Philadelphia. The witnesses followed the defendant until he arrived at his house that was 25 yards into Cheltenham Township. The eyewitnesses reported this information to the Philadelphia Police.

¶ 10 Officer Schwartz of the Philadelphia Police received information that a driver had struck two vehicles in the City of Philadelphia along with the address of the defendant's house in Cheltenham where he was located. Officer Schwartz proceeded to that address where he found the defendant, who was visibly intoxicated and could barely stand. Officer Schwartz also observed Appellant's heavily damaged vehicle. Based on the foregoing, Officer Schwartz arrested the defendant for DUI.

¶ 11 The defendant filed a motion to suppress claiming that his arrest was not legal under the MPJA because Officer Schwartz was not in hot and fresh pursuit when he arrested the defendant. The trial court denied the motion, and on appeal we concluded that Officer Schwartz's actions satisfied the hot and fresh pursuit requirement of Section 8953(a)(2). *See id.* at 1266. We explained that "hot pursuit" requires some sort of chase, but does not

require a "fender-smashing Hollywood-style chase scene" nor "police observation of the criminal activity." *Id.* Furthermore, pursuit of a suspect may constitute a chase when it is "based on witness information as to the location of the suspect." *Id.* And "fresh pursuit" requires that it be immediate, continuous and uninterrupted. *See id.*

¶ 12 Applying this standard in the instant appeal, we begin with the fact that Officer Hill received the radio call at 10:15 p.m. and that he arrived at the scene of the accident only five minutes later. After spending a short period of time gathering evidence and relaying this information to his dispatcher, Officer Hill set out to find the white pick-up truck. A short time later, Officer Hill received information that Franklin police officers had located the vehicle, only one-half mile from the scene of the accident in Sugarcreek. Officer Hill arrived at the location of the vehicle sometime between 10:45 p.m. and 11:00 p.m., which was only thirty to forty-five minutes after the estimated time of the accident. After arriving at the vehicle location, Officer Hill matched some of the plastic pieces he had gathered at the accident scene with pieces missing from the vehicle. Officer Hill also noted that the vehicle had varying amounts of body damage and that the front passenger side tire was flat. Shortly after Officer Hill arrived at the scene of the vehicle, Appellant called the police to turn himself in, and Officer Hill reached Appellant's residence at 11:15, approximately only one hour after the accident occurred.

¶ 13 Thus, after Officer Hill received the radio call reporting the accident, he *immediately* began pursuing Appellant, first arriving at the accident scene and then tracking him to the abandoned vehicle, and ultimately to Appellant's house. The information that guided Officer Hill as he *chased* Appellant from one scene to the

next was of course provided first by witnesses, then the Franklin police, and lastly by Appellant himself. Nonetheless within an approximately one hour period, Officer Hill *continuously* pursued Appellant without *interruption,* and at each step of the pursuit he got closer to catching him. We conclude that under these facts, and in accordance with our holding in *McPeak,* Officer Hill was in fresh and hot pursuit of Appellant when he arrived at Appellant's house at 11:15.

¶ 14 Next, we must determine whether Appellant's arrest for suspicion of DUI was legal under the MPJA. As noted above, Officer Hill had probable cause to believe that Appellant had committed a violation of 75 Pa.C.S. § 3745 (hit and run) in Sugarcreek. However, during the pursuit, Officer Hill gathered information sufficient to establish probable cause of a DUI violation, which violation also occurred in Sugarcreek. While an officer may not arrest a suspect for committing a summary traffic offense outside the officer's presence, *see* Pa.R.Crim.P. 400; 75 Pa.C.S. § 6304(b), a warrantless arrest based upon probable cause of a DUI violation is certainly permissible. *See* 75 Pa. C.S. § 3731(c) (repealed 2003).

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of

criminal activity that is a standard of probable cause.

*Commonwealth v. Holton,* 906 A.2d 1246, 1249 (Pa.Super.2006).

¶ 15 Upon arriving at Appellant's house, Appellant admitted to Officer Hill that Appellant drank five beers before the accident. Officer Hill observed that Appellant had bloodshot, glassy eyes, and emitted a strong odor of alcohol. Furthermore, after changing his story twice, Appellant gave a far-fetched account of swerving his vehicle to miss a dog that was chasing a bunny. Based on these circumstances, we conclude that Officer Hill had probable cause to arrest Appellant on suspicion of DUI. We are cognizant of the fact that Officer Hill left his primary jurisdiction to pursue Appellant for violation of a summary offense for which Appellant could not have been arrested. However, as our foregoing analysis indicates, Officer Hill was operating in accordance with the MPJA, which granted him "the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction." 42 Pa.C.S. § 8953(a). Thus, when the facts known to Officer Hill ripened into probable cause of a DUI violation, a warrantless arrest of Appellant became entirely legal.

¶ 16 Alternatively, were we to conclude that Officer Hill's actions did not meet the requirements of the MPJA, *i.e.,* Officer Hill was *not* actually in hot *and* fresh pursuit, we would nonetheless conclude that the exclusionary rule would be inapplicable in this case and suppression of evidence would not be a remedy available to Appellant. In *Commonwealth v. Laird,* 797 A.2d 995 (Pa.Super.2002), we recognized the purpose of the MPJA as follows:

One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. *Commonwealth v. Merchant,* 528 Pa. 161, 167, 595 A.2d 1135, 1138 (1991). It is in the interest of promoting public safety, therefore, that the MPJA exceptions contemplate and condone "extra-territorial activity in response to specifically identified criminal behavior that occur[s] within the primary jurisdiction of the police." *Fetsick,* 572 A.2d at 795 (quoting *Commonwealth v. Merchant,* 385 Pa.Super. 264, 560 A.2d 795, 799 (1989)).

*Laird,* 797 A.2d at 998. Because of this purpose, our Supreme Court has explained that suppression of evidence is not always an appropriate remedy when there has been a violation of the MPJA. In *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989), the court stated:

In *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985), we held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties.

The Superior Court has recognized that, under *Mason,* suppression of evidence may or may not be the appropriate remedy for a violation of section 8953 of the Act, depending upon all of the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the Act, and the prejudice to the accused. We approve of this case-by-case approach to the determination of the appropriateness of exclusion of evidence allegedly obtained in violation of the Act. Accordingly, we affirm the suppression court's alternative ruling that exclusion of the challenged evidence would not be warranted in this case even if the search was considered to be "illegal" under section 8953.

*Id.* at 1030 (citations and footnote omitted).

¶ 17 Consistent with this precedent, this Court, sitting *en banc,* concluded that even though there may have been a violation of the MPJA, suppression was not the appropriate remedy under the facts of the case. *See Commonwealth v. Chernosky,* 874 A.2d 123, 129 (Pa.Super.2005) (en banc). In *Chernosky,* an off-duty police officer from Tredyffrin Township came upon a vehicle that was being operated extremely erratically; the defendant was the driver. At the time, the officer and the defendant were both in Tredyffrin. The officer called 911 while she continued to follow the defendant. Without a signal from the officer, the defendant pulled her vehicle over. At this point, they were both approximately one-half mile outside of Tredyffrin, now in Williston Township. At about the same time, Officer Carsello from the Tredyffrin police arrived. Officer Carsello smelled a strong odor of alcohol on the defendant's breath and the defendant slurred her speech and was rambling. After failing field sobriety tests, Officer Carsello arrested the defendant.

¶ 18 On appeal, we concluded that Officer Carsello's actions were permissible under Section 8953(a)(2). Furthermore, we recognized that even if there had been a

technical violation of the MPJA, suppression would not be warranted.

In the instant case, Officer Carsello did not enter Willistown Township in order to conduct an extraterritorial patrol or to obtain further facts to support a probable cause determination. He was directed to make the investigatory detention. Officer Carsello's actions did not constitute the type of behavior that the legislature sought to prohibit through the enactment of the MPJA, and therefore, suppression would not be an appropriate remedy in this case even had the MPJA been violated.

*Id.* at 130.

¶ 19 In the case before us, Officer Hill armed with a vehicle description and some evidence gathered at the scene, set out to apprehend a suspect for committing a hit and run violation within Officer Hill's primary jurisdiction. His pursuit, which lasted little over an hour, took him into a neighboring jurisdiction where he found Appellant to be visibly intoxicated. Officer Hill was not patrolling outside his jurisdiction, nor was he in search of further evidence. He had all he needed to cite the perpetrator of the hit and run, and all that was left was to catch the suspect. Upon apprehending Appellant, it became immediately apparent that he had also committed a DUI violation in Officer Hill's primary jurisdiction. Thus, Officer

Hill's actions did not constitute the type of action that the legislature sought to proscribe by enacting the MPJA, and consequently, suppression would not be appropriate.[2] Therefore, we conclude that the trial court did not err in denying Appellant's motion to suppress.[3]

¶ 20 Judgment of sentence affirmed.

---

**2.** *But see Commonwealth v. Bradley,* 724 A.2d 351 (Pa.Super.1999) (en banc). In *Bradley,* this Court did not recognize the case by case approach espoused by our Supreme Court in *O'Shea,* and instead unequivocally stated that "the exclusionary rule applies even if the police officer acts in good faith or the police officer's actions would have been lawful if performed within the proper jurisdictional limits." *Bradley,* 724 A.2d at 354. Subsequent to our decision in *Bradley,* this Court decided *Chernosky,* another *en banc* decision, and therefore, we consider our holding in *Chernosky* to be binding precedent on this issue.

**3.** Appellant also argues that pursuant to the now repealed Section 3731(c), "[f]or a DUI, the only extraterritorial location where the warrantless arrest power exists is in 'any hospital or other medical treatment facility.'" Brief for Appellant at 18. This argument is meritless, as this section was clearly intended to be "[i]n addition to any powers of arrest" possessed by a police officer and not as one proscribing extraterritorial arrests for DUIs unless they occur in a hospital. 75 Pa.C.S. § 3731(c) (repealed 2003).