COMMONWEALTH of Pennsylvania,
Appellee

v.

Larry A. REIGEL, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 15, 2012.

Filed Sept. 13, 2013.

Frank R. Cori, Orwigsburg, for appellant.

Karen Byrnes, Assistant District Attorney, Pottsville, for Commonwealth, appellee.

BEFORE: BOWES, SHOGAN, and PLATT *, JJ.

OPINION BY PLATT, J.:

Appellant, Larry A. Reigel, appeals from the judgment of sentence entered on April 19, 2012, following his conviction of various Pennsylvania Motor Vehicle Code violations. On appeal, Appellant argues, *inter alia*, that the Municipal Police Jurisdiction Act (MPJA)[1] does not authorize a police officer, acting within his primary jurisdiction, to issue a citation for a summary offense committed in another jurisdiction. After careful review, we affirm.

The trial court stated the procedural and factual history as follows:

Appellant[ ] was found guilty of violating various Pennsylvania Motor Vehicle Code provisions—driving vehicle at safe speed (75 Pa.C.S.[A. §] 3361), traffic control signals (75 Pa.C.S.[A. §] 3112(a))[a], and careless driving/serious bodily injury (75 Pa.C.S.[A. §] 3714(c)), following an April 19, 2012 summary trial *de novo*. [Appellant] was also found not guilty of a restraint systems violation. (75 Pa.C.S.[A. §] 4581(a)(2)).

[Appellant] was sentenced to pay applicable costs and a $25.00 fine for each of the safe speed and traffic signal violations and a fine of $250.00 for the careless driving/serious bodily injury violation. He thereafter filed an appeal to the Superior Court of Pennsylvania on May 8, 2012. . . .

--------

[a] [Appellant] was cited for two traffic light violations—one occurring in Saint Clair Borough and one in the City of Pottsville.

[Appellant] had been cited by Saint Clair Chief of Police Michael Carey following his investigation of an October 19, 2011 multi-vehicle collision at the intersection of West Hancock Street and Pennsylvania Route 61 in Saint Clair, Schuylkill County. At trial, the Commonwealth presented testimony from numerous witnesses.

The evidence found reliable by the court established that [Appellant], who was operating a tractor-trailer, had driven through a steady red light at the West Hancock Street/Route 61 intersection while traveling in a northerly direction on Route 61. At the time— about 6:55 p.m.—the roadway was wet and the area was dark. Northbound Route 61 consisted of two lanes, together with a separate left turning lane. Southbound Route 61, likewise, consisted of two lanes, together with a separate left turning lane onto West Hancock Street.

Immediately prior to and at the time of the incident, the traffic signal facing the southbound left turn lane had a green arrow. Amanda Dempsey, traveling south, was in the process of turning

* Retired Senior Judge assigned to the Superior Court.

1. 42 Pa.C.S.A. §§ 8951–8954

left to cross the northbound lanes of Route 61 and enter West Hancock Street, while [Appellant] was traveling in the northbound passing lane of Route 61 facing a steady red light. Brenda Gustas was operating a vehicle in the southbound left turning lane behind the Dempsey vehicle. As he traveled through the red light, [Appellant] struck Dempsey's vehicle, which then struck the Gustas vehicle. Thereafter, [Appellant] continued to travel northbound about 188 feet on the southbound side of Route 61, where he hit a guardrail and took out about 61 feet of its length.

Four of the five citations Carey issued which were heard by the court involved the collision in Saint Clair. The other citation [Citation 63–2] involved [Appellant]'s having driven through a steady red light in the City of Pottsville, Schuylkill County, prior to his entering Saint Clair Borough.

In his investigation, Chief Carey interviewed numerous witnesses, including [Appellant], Dempsey and Gustas. He also obtained statements from northbound travelers Dwayne Tietsworth, Kimberly Evans and Angela Emery, all of whom had driven in the same direction as [Appellant] on Route 61 through the city of Pottsville, prior to and up to the collision in Saint Clair.

Evidence Chief Carey uncovered established that shortly before the collision, [Appellant] had driven through a steady red light at the intersection of Routes 61 and 209 (Mauch Chunk Street) in Pottsville. As a result of this information, Chief Carey contacted both the Pottsville City Police Department and the Schuylkill County District Attorney's Office. He informed those entities of his crash investigation and that he had information of [Appellant]'s having committed a Vehicle Code violation within the City of Pottsville prior to the Saint Clair Borough collision. The Pottsville City Chief of Police and the Schuylkill County District Attorney told Chief Caret to continue his investigation and to file any appropriate charges relative to any Vehicle Code Violations which had occurred within Pottsville. . . .

(Trial Court Opinion, 6/27/12, at 1–3).

■ Appellant raises the following issues on appeal:

A. Whether the trial court erred in overruling [Appellant]'s motion to dismiss Citation 63–2 based on lack of jurisdiction of the issuing police officer?

B. Whether [Appellant] was denied effective assistance of counsel in the following respects, and is entitled to a hearing on the same:

a. Trial Counsel failed to properly investigate the traffic light sequence at the site of the alleged traffic violation, which investigation was expressly requested by [Appellant]?

b. Trial Counsel was distracted by interruptions during the trial including participating in separate court proceedings involving a different criminal defendant and the need to make arrangements for his minor child?

c. Trial Counsel failed to object to the admission of an oral statement made by [appellant] to the investigating officer even through there was no foundation for admission of the statement?

(Appellant's Brief, at 2–3).

Our standard of review from an appeal of a summary conviction heard *de novo* by the trial court is limited to a

determination of whether an error of law has been committed and whether the findings of fact are supported by competent evidence. The adjudication of the trial court will not be disturbed on appeal absent a manifest abuse of discretion.

*Commonwealth v. Marizzaldi,* 814 A.2d 249, 251 (Pa.Super.2002) (citations and quotation marks omitted).

The courts of this Commonwealth have consistently held that in applying the MPJA in a manner that effectuates its purpose, we should construe its provisions liberally.

This Act is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice. Specifically, one of the principle objectives to be obtained by this Act is to promote public safety while maintaining jurisdictional police lines.

*Commonwealth v. Peters,* 915 A.2d 1213, 1217–18 (Pa.Super.2007), affirmed, 600 Pa. 268, 965 A.2d 222 (2009) (citations omitted).

Appellant first claims that the trial court erred in overruling his motion to dismiss Citation 63–2 against him based on a lack of jurisdiction of the issuing police officer. Appellant specifically asserts that Saint Clair Chief Carey was without jurisdiction to cite him for violating a red traffic signal in Pottsville, despite receiving the permission of the Pottsville City Police Department to do so. (*See* Appellant's Brief, at 8, 10–13). We disagree.

■ Here, the trial court determined that Saint Clair Chief of Police Michael

Carey obtained the requisite consent to cite Appellant for running a red light in Pottsville pursuant to 42 Pa.C.S.A. § 8953(a)(4). (*See* Trial Ct. Op., 6/27/12, at 3–5).

Section 8953 of the MPJA provides, in relevant part:

**(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, **shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction** in the following cases:

\*     \*     \*

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

42 Pa.C.S.A. § 8953(a)(4) (emphasis added).

Pennsylvania Rule of Criminal Procedure 410 provides:

When it is not feasible to issue the citation to the defendant or when evidence is discovered after the issuance of a citation that gives rise to additional summary charges against the defendant resulting from the same incident, a law

enforcement officer shall institute a criminal proceeding in a summary case by filing a citation with the proper issuing authority.

Pa.R.Crim.P. 410.[2]

Here, the charges in Pottsville arose from the same incident that resulted in the collision in Saint Clair which was being investigated by Chief Carey. The record supports the trial court's determination that, based on information from eyewitnesses who had followed Appellant driving northbound on Route 61 from Pottsville to Saint Clair, Chief Carey had probable cause to believe that Appellant committed a traffic signal violation in Pottsville. (*See* N.T. 4/19/12, at 23–24). Chief Carey then obtained permission from the chief of police in Pottsville and the district attorney to continue to investigate the violation and to file the charge. (*Id.* at 32–33).

Accordingly, although Chief Carey did not himself witness Appellant violate the traffic signal in Pottsville, he did have probable cause to believe this offense was committed in the course of the incident he was investigating. *See, e.g., Commonwealth v. Hernandez,* 594 Pa. 319, 935 A.2d 1275, 1284 (2007) (holding that, when evaluating probable cause in the totality of the circumstances, "it is reasonable to assume that an identified citizen who reports an observation of criminal activity to police is trustworthy[.]"). Therefore, had this violation taken place in his primary jurisdiction, Chief Carey would have had the authority to issue a citation. *See* 42 Pa.C.S.A. § 8952(1); *see also* Pa. R.Crim.P. 410. When he learned of the violation outside his primary jurisdiction

in the course of his investigation of the collision in Saint Clair, he obtained the prior consent of proper authorities in order to "conduct[ ] official duties which arise from official matters within his primary jurisdiction," 42 Pa.C.S.A. § 8953(a)(4), in order to issue a citation for the traffic violation in Pottsville.

Therefore, the trial court's determination that Chief Carey had the authority to issue a citation beyond the territorial limits of his primary jurisdiction pursuant subsection 8953(a)(4) of the MPJA is supported by competent evidence, and the trial court did not commit an error of law in overruling Appellant's motion to dismiss Citation 63–2. *See Marizzaldi, supra* at 251; *Peters, supra* at 1217–18. Accordingly, this issue is without merit.

Next, Appellant claims counsel was ineffective in several respects. He contends that he was denied effective assistance of counsel because his counsel: (a) failed to properly investigate the traffic light sequence at the site of the violations; (b) was distracted by interruptions during the trial due to his participating in a separate court proceeding involving a different defendant and his making child care arrangements; and (c) failed to object to the admission of an oral statement by Appellant to the investigating officer, despite a lack of foundation for its admission. (*See* Appellant's Brief, at 3).

■ Here, the trial court addressed Appellant's claims of ineffective assistance of trial counsel as follows:

[Appellant] also indicates that he desires to complain on appeal about his summary trial counsel's representation.

---

2. Further, it is noted that a "Law Enforcement Officer is any person who is by law given the power to enforce the law when acting within the scope of that person's employment." Pa.R.Crim.P. 103.

As no legal basis is cited, nor any factual grounds exist in the record to grant relief on the basis of ineffective assistance of counsel, it is believed that his complaints are without merit. First, ineffective assistance of counsel complaints may only be raised in collateral proceedings. *Commonwealth v. O'Berg* [584 Pa. 11], 880 A.2d 597 (Pa.2005); *Commonwealth v. Straub*, 936 A.2d 1081 (Pa.Super.2007)[, *appeal denied*, [600 Pa. 732], 963 A.2d 470 (Pa.2009) ]. Further, to be eligible to obtain relief for such a complaint, a petitioner must be convicted of a crime and serving a sentence of imprisonment, probation or parole for the crime.... *O'Berg, supra*; 42 Pa. C.S.[A. §] 9543(a)(1)(i). [Appellant], however, was sentenced to pay fines and costs only. Consequently, the law does not provide [Appellant] an avenue to pursue his ineffective assistance of summary trial counsel claims.

(Trial Ct. Op., 6/27/12, at 5).

■ Although we are not unsympathetic to Appellant's concerns regarding the collateral consequences of his convictions on his commercial driver's license and his lack of recourse for ineffective assistance of counsel claims, we agree with the trial court that these claims cannot be reviewed on direct appeal under current law.

Judgment of sentence affirmed. Jurisdiction relinquished.

SHOGAN, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY SHOGAN, J.:

Because I believe that the majority in this matter has erroneously affirmed the entire judgment of sentence, I am constrained to set forth my dissent. It is undisputed that Appellant is appealing from the judgment of sentence entered following his summary convictions of various Pennsylvania Motor Vehicle Code violations. On appeal, Appellant argues that the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. §§ 8951–8954, does not authorize a police officer, acting within his primary jurisdiction, to issue a citation for a summary offense committed in another jurisdiction and witnessed solely by private citizens. Upon review of the facts of this case and the relevant law, I am compelled to agree with Appellant's argument in this respect. Thus, I would reverse in part and affirm in part.

"Our standard of review from an appeal of a summary conviction heard *de novo* by the trial court is limited to a determination of whether an error of law has been committed and whether the findings of fact are supported by competent evidence." *Commonwealth v. Marizzaldi*, 814 A.2d 249, 251 (Pa.Super.2002).

Appellant first claims that the trial court erred in overruling his motion to dismiss Citation 63–2 based on lack of jurisdiction of the issuing police officer. Appellant contends that Saint Clair Chief Carey was without jurisdiction to cite Appellant for violating a red traffic signal in Pottsville. Appellant's Brief at 8, 10–13.

The trial court addressed this jurisdictional issue as follows:

Evidence Chief Carey uncovered established that shortly before the collision, [Appellant] had driven through a steady red light at the intersection of Routes 61 and 209 (Mauch Chunk Street) in Pottsville. As a result of this information, Chief Carey contacted both the Pottsville City Police Department

and the Schuylkill County District Attorney's Office. He informed those entities of his crash investigation and that he had information [from private citizen witnesses] of [Appellant] having committed a Vehicle Code violation within the City of Pottsville prior to the Saint Clair Borough collision. The Pottsville City Chief of Police and the Schuylkill County District Attorney told Chief Carey to continue his investigation and to file any appropriate charges relative to any Vehicle Code violations which had occurred within Pottsville. As a result, Chief Carey did-ultimately issuing [Appellant] the citation for the traffic light violation at the Route 61/Route 209 intersection.

[Appellant] did not present contradictory proof from that offered by Chief Carey, relative to the discussions he had had with, and the consent he had received from the Pottsville Police Chief. Consequently, based upon the uncontradicted testimony from Chief Carey, it was found that he properly cited [Appellant] for the traffic violation which occurred in Pottsville shortly before the Saint Clair accident, which had been witnessed by some of the same persons who had also seen the collision. *See, Commonwealth v. Sestina* [376 Pa.Super. 441], 546 A.2d 109 (Pa.Super.1988) (municipal police jurisdiction statute to be liberally construed so to satisfy purpose of law).

Trial Court Opinion, 6/27/12, at 3–5.

The trial court relied upon section 8953(a)(4) of the MPJA in support of its decision not to dismiss Citation 63–2. Section 8953 of the MPJA provides, in pertinent part, as follows:

**§ 8953. Statewide municipal police jurisdiction**

**(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, **but beyond the territorial limits of his primary jurisdiction,** shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law en-

forcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S.A. § 8953(a) (emphasis added). Section 8953, thus, addresses the power and authority of police officers to issue citations **beyond** the territorial limits of their primary jurisdictions. It does not address the power and authority of police officers to issue citations while they are **within** their primary jurisdictions, as the facts of this case reflect. *See also Moyer v. Department of Transportation, Bureau of Driver Licensing,* 28 A.3d 943 (Pa. Cmwlth.2011) (holding Section 8953 relates to extra-territorial municipal police officer jurisdiction and does not apply where arrest occurs within officer's primary juris-

diction).[1] Hence, I believe that section 8953 is inapposite.

Section 8952 is the provision of the MPJA that addresses the authority of municipal police officers to issue citations within their primary jurisdictions. This section provides as follows:

### § 8952. Primary municipal police jurisdiction

Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere **within his primary jurisdiction** as to:

(1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.

(2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the police in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth.

42 Pa.C.S.A. § 8952 (emphasis added).

After careful review of the record, I am forced to conclude that the facts of this case do not meet the statutory requirements of either section 8952(1) or (2). The record reflects that Citation 63–2 was issued for a traffic violation in Pottsville, a jurisdiction outside of Chief Carey's Saint Clair jurisdiction. Although he obtained the permission of the Pottsville Chief of Police and the Schuylkill County District Attorney prior to the filing of the charges, Chief Carey did not directly view the of-

---

1. I acknowledge that the decisions of the Commonwealth Court are not binding precedent in this Court, but may provide persuasive authority. *Commonwealth v. Kositi,* 880 A.2d 648, 653 n. 4 (Pa.Super.2005).

fense or have probable cause to believe it was committed within his primary jurisdiction. Chief Carey's information about the Pottsville violation was obtained from private citizens who observed Appellant driving through the red light. Furthermore, there is no evidence of "any other event that occur[ed] within his primary jurisdiction and which reasonably require[d] action on the part of [him] in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth." Thus, I am constrained to conclude that Chief Carey was not authorized to issue Citation 62–3 under section 8952 of the MPJA.

Accordingly, because the trial court erred in determining that Chief Carey's citation of Appellant for the red light traffic violation in Pottsville was permissible under section 8953 and because the citation was not authorized pursuant to section 8952, I would reverse the judgment of sentence as it relates to Citation 62–3.

With regard to Appellant's second issue raising allegations of trial counsel's ineffective assistance, I agree with the majority's disposition. As the majority accurately concludes, these claims cannot be reviewed on direct appeal under our current case law.

For these reasons, I would reverse the judgment of sentence as to Citation 63–2 and affirm in all other respects.[2]

---

**2.** The record reflects that the Pottsville red traffic control signal citation was fully numbered B8734063–2. Original Record at 3.