J. S63001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                                        :           PENNSYLVANIA
                     v.                                 :
                                                         :
PHILLIP DANIEL ARCHER,             :           No. 3471 EDA 2015
                                                         :
                 Appellant                :

Appeal from the Judgment of Sentence, October 11, 2013,
in the Court of Common Pleas of Northampton County
Criminal Division at No. CP-48-CR-0000485-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED OCTOBER 03, 2016**

Phillip Daniel Archer appeals ***nunc pro tunc*** from the October 11,

2013 judgment of sentence of five to ten years' imprisonment imposed after

a jury found him guilty of unlawful possession of a firearm.[1]  After careful

review, we affirm the judgment of sentence.

The trial court summarized the relevant facts adduced at trial as

follows:

> Early in the morning on May 28, 2012,
> [appellant] checked into Room 125 of the Knights
> Inn Hotel.  [Appellant] was in the company of a
> female companion, Rashida McClain [("McClain")].
> [Appellant] and [McClain] requested to change their
> room approximately forty-five minutes later,
> apparently complaining that bugs were located in

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105.

Room 125. The hotel staff provided [appellant] with a new room, numbered 268.

After [appellant] and [McClain] vacated Room 125, Virginia Sarver, the executive housekeeper at the Knights Inn Hotel, was alerted to the presence of a gun under the pillow in Room 125 by one of her employees who had been cleaning the recently-vacated room. Upon inspection, Ms. Sarver observed a gun under the pillow of the bed in Room 125. Ms. Sarver informed the front desk manger to immediately "lock the room out." Ms. Sarver locked Room 125 out and did not go back into it.

. . . .

On May 28, 2013, Raja Mehta was working as the front desk manager at the Knights Inn Hotel. Her shift was 9:00 pm – 4:00 am. During her shift, a male guest informed Ms. Mehta that he had left something in Room 125. Ms. Mehta recalled that a female may have been standing behind the male. Ms. Mehta gave the male guest access to Room 125 to search for his items, pursuant to the Knights Inn Hotel's policy. Nearly simultaneously, Ms. Mehta was notified of the presence of a gun in Room 125. Upon inspection of the record for the room, Ms. Mehta discovered that the name of the guest for Room 125 was "Archer." Ms. Mehta then called the general manager and the police to report the presence of a gun in the hotel room to them, again following established protocol.

[At approximately 9:30 a.m.,] Trooper Ryan Belusko of the Pennsylvania State Police was dispatched to the Knights Inn Hotel due to the report of a firearm in a hotel room. Trooper Belusko spoke with the office manager about the report and requested information regarding the person who rented the room. He was given a Connecticut ID for [appellant]. Trooper Belusko ran the ID and discovered that [appellant] was not permitted to possess a firearm. Trooper Belusko conducted a

> search of Room 125, but did not find the firearm. Trooper Belusko did not conduct a search of the second room, Room 268. According to his testimony, [Trooper Belusko] went to Room 268 [at approximately 11 a.m., accompanied by other troopers] and knocked and announced [their] presence. [McClain] opened the door to Room 268. Both [appellant] and [McClain] were removed from the room and transported to the State Police barracks [("PSP Bethlehem")]. . . .

Trial court opinion and order, 11/19/13 at 2-3 (footnote omitted).

After the troopers entered Room 268, appellant repeatedly denied that there was a gun in the room. (Trial court opinion, 7/15/13 at 5, citing notes of testimony, 2/12/13 at 37.) The troopers did not search Room 268 or gather any evidence at this time. (Notes of testimony, 5/31/13 at 14-15.) While the troopers waited for approval of the search warrant, they secured Room 268 by closing the door and posting a trooper outside. (*Id.* at 15.) At approximately 11:30 a.m., appellant was read his *Miranda*[2] rights at PSP Bethlehem, and declined to make any verbal or written statements to police. (*Id.* at 15-16.) Thereafter, at approximately 12:30 p.m., Corporal Jason R. Troutman, a supervisor in charge of the Pennsylvania State Police forensics services unit, executed a search warrant for Room 268. (*Id.*) Corporal Troutman found a silver .40-caliber Ruger P94 pistol submerged in the retention tank behind the toilet, as well as cash and jewelry. (*Id.*) Appellant was subsequently placed under arrest. While in custody, appellant

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

inquired as to whether McClain would be charged and ultimately made a statement indicating that McClain "doesn't know nothing about nothing." (Trial court opinion 7/15/13 at 8-9, citing notes of testimony, 2/12/13 at 38, 42.)

On May 28, 2012, appellant was charged with unlawful possession of a firearm.[3]  On May 6, 2013, appellant filed an omnibus pre-trial motion to, *inter alia*, suppress the evidence seized from his unlawful detention and the search of his room, as well as any statements he made to police.  (**See** "Omnibus Pre-Trial Motion for Relief," 5/6/13 at ¶¶ 6-10.)  Following a hearing, the trial court filed a comprehensive opinion and order denying appellant's suppression motion on July 15, 2013.  Thereafter, appellant proceeded to a jury trial and was found guilty of unlawful possession of a firearm on September 10, 2013.  As noted, appellant was sentenced to five to ten years' imprisonment on October 11, 2013.  On October 23, 2013, appellant filed untimely post-sentence motions.  **See** Pa.R.Crim.P. 720(A)(1) (stating, "[e]xcept as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.").  The trial court denied appellant's post-sentence motions on November 19, 2013.  On November 26, 2013, appellant filed notice of

---

[3] Appellant was also charged at docket No. CP-48-CR-0000486-2013 with robbery and related offenses for an incident that took place earlier that same day.  That matter went to trial in August 2013, and appellant was found not guilty of all charges.

appeal that was ultimately dismissed by this court for failure to file a brief. (***See per curiam*** order, 10/10/14.)

On October 7, 2015, appellant filed a timely petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, requesting that his direct appeal rights be reinstated. On October 23, 2015, the trial court granted appellant's petition and reinstated appellant's direct appeal rights ***nunc pro tunc***. This timely appeal followed on November 10, 2015.[4]

On appeal, appellant raises the following issue for our review:

> Did the [trial] court er[r] in failing to sup[p]ress statements made by [appellant] as well as physical evidence and observations obtained from a warrantless entry into a hotel room in which he was staying as well as the later entry into the same room pursuant to a search warrant?

Appellant's brief at 5.

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those]

---

[4] Appellant and the trial court complied with Pa.R.A.P. 1925.

> findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted; brackets in original).

Appellant raises multiple sub-issues in support of his claim that the trial court erred in denying his suppression motion. (*See* appellant's brief at 5-6.) For the ease of our discussion, we elect to address some of these issues concurrently.

Appellant's first two claims challenge his initial encounter with police and whether the troopers' warrantless entry into his hotel room was illegal. (*See id.* at 16-29.)

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009) (citation and internal quotation marks omitted). "[W]arrantless searches and seizures are . . . unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Id.* at 556. One exception to the warrant requirement is when probable cause and exigent circumstances are present. "Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment [of the United States Constitution] and Article 1[,] § 8 of the Pennsylvania

Constitution." **Commonwealth v. Bowmaster**, 101 A.3d 789, 792 (Pa.Super. 2014) (citation omitted). These constitutional protections have been extended to include a person's hotel room. **See Commonwealth v. Dean**, 940 A.2d 514, 521 (Pa.Super. 2008) (stating, "[w]arrantless searches and seizures inside a . . . hotel room are presumptively unreasonable unless the occupant consents or probable cause and exigent circumstances exist to justify intrusion.") (citations and parentheses omitted).

Herein, appellant first argues that the troopers lacked probable cause to enter his hotel room on the day in question. (Appellant's brief at 16.) "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." **Commonwealth v. Griffin**, 24 A.3d 1037, 1042 (Pa.Super. 2011), **appeal denied**, 34 A.3d 82 (Pa. 2011) (citation omitted).

Instantly, our review of the record reveals that the troopers had probable cause to believe that appellant had committed a crime at the time they entered his hotel room. The record reveals that at approximately 9:30 a.m., Trooper Belusko was dispatched to the Knights Inn Hotel to investigate a report that a firearm had been discovered in one of the rooms. (Notes of testimony, 5/31/13 at 7-8.) Upon arriving at the hotel, Trooper Belusko spoke to the front desk manager and the member of the cleaning staff, both of whom had observed the firearm under a pillow in

Room 125. (**Id.** at 8-9, 19-21.) Trooper Belusko checked Room 125 with cleaning staff personnel but did not find the firearm. (**Id.** at 10.) Trooper Belusko was aware that appellant had checked into Room 125 earlier that morning, but had recently switched to Room 268. (**Id.** at 8, 10-11.) Trooper Belusko was also aware that appellant had two prior felony convictions that disqualified him from lawfully possessing a firearm and had re-entered Room 125 prior to the trooper's arrival to retrieve something he had forgotten. (**Id.** at 9-11.)

Appellant also contends that there were no exigent circumstances in this case sufficient to justify the troopers' warrantless entry in appellant's hotel room. (Appellant's brief at 21.) We disagree.

Exigent circumstances arise only where "the need for prompt police action is imperative, either because the evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger . . . ." **Commonwealth v. Lee**, 972 A.2d 1, 5 (Pa.Super. 2009) (citation omitted).

> [V]arious factors need to be taken into account to assess the presence of exigent circumstances; for example: 1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that

> evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action.

*Dean*, 940 A.2d at 522 (citation omitted).

Contrary to appellant's contention, our examination of the *Dean* factors reveals that there were exigent circumstances in this case sufficient to justify the troopers' warrantless entry in appellant's hotel room. The gravity of the offense in this matter is high; unlawful possession of a firearm is graded as a second-degree felony. *See* 18 Pa.C.S.A. § 6105(a.1). As discussed, Trooper Belusko clearly had probable cause to believe appellant was in unlawful possession of the firearm that was observed by hotel staff earlier that morning. The record further reveals that Trooper Belusko was informed by hotel staff that appellant was in Room 268. (Notes of testimony, 5/31/13 at 11.) Trooper Belusko also testified that one of the reasons he elected to enter Room 268 rather than wait for the search warrant was that "the search warrant does take some time and in that time [appellant] could have left . . . the motel room, possibly with a firearm." (*Id.* at 13).

Additionally, the record reflects that the troopers' entry into Room 268 was relatively peaceable. Prior to obtaining a search warrant for Room 268, Trooper Belusko received verbal confirmation to detain appellant and secure Room 268. (*Id.* at 11-12, 27.) At approximately 11 a.m., Trooper Belusko,

Trooper Alamo,[5] and Corporal Peter Candianis ("Corporal Candianis") knocked on the door of Room 268, announced who they were, and stated that they wished to speak to appellant. (*Id.* at 12-14.) Although Corporal Candianis removed McClain from the doorway and Troopers Belusko and Alamo entered the room behind a ballistics shield, appellant was found standing naked at the foot of the bed. (*Id.*) There was no indication of any violence, undue force, or threats. Furthermore, the troopers' entry into Room 268 did not occur at night, but rather mid-morning, at approximately 11 a.m. *See cf. Commonwealth v. Berkheimer*, 57 A.3d 171, 179 (Pa.Super. 2012) (stating that, "the fact that an entry is made at night raises particular concern over its reasonableness[.]") (citation omitted).

The troopers in this matter were not in hot pursuit of a fleeing felon and had no reason to believe appellant was attempting to destroy the firearm. However, the record reveals that the troopers' entry into Room 268 was conducted, in part, based upon their belief that appellant posed a danger to both the troopers and the other hotel guests. Trooper Belusko testified that after he was unable to locate the firearm in Room 125, he made the decision to obtain a search warrant for Room 268 because the hotel's "rooms were rented out by multiple people[,]" appellant had two prior felony convictions, and "[t]he public was at risk, officer safety [was] at risk[.]" (Notes of testimony, 5/31/13 at 12-13.)

---

[5] Trooper Alamo's first name is not apparent from the record.

Based on the foregoing, we conclude that appellant's claim that the trial court should have granted his suppression motion because there was no probable cause nor exigent circumstances to justify the troopers' entry into his hotel room must fail.

Appellant next argues that the trial court erred in denying his motion to suppress various statements he made to the troopers. Appellant contends that, even if exigent circumstances existed for the troopers to enter his hotel room, his statement that there was no firearm in the room should have been suppressed because he was not advised of his **Miranda** rights prior to making this statement. (Appellant's brief at 30, citing notes of testimony, 2/12/13 at 37.) Appellant further avers that the statement he made to the troopers at PSP Bethlehem indicating that McClain "doesn't know nothing about nothing" should have been suppressed because it stemmed from his illegal arrest and was made after he indicated that he did not want to speak with the troopers. (Appellant's brief at 45, citing notes of testimony, 2/12/13 at 42.) These claims are meritless.

> It is a fundamental precept enshrined in the United States Constitution that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney.

**Commonwealth v. Cruz**, 71 A.3d 998, 1003 (Pa.Super. 2013), **appeal denied**, 81 A.3d 75 (Pa. 2013) (citation omitted). A custodial interrogation occurs when there is a "questioning initiated by the police after a person has

been taken into custody or otherwise deprived of his or her freedom of action in any significant way." ***Commonwealth v. Clinton***, 905 A.2d 1026, 1032 (Pa.Super. 2006), ***appeal denied***, 934 A.2d 71 (Pa. 2007) (citations and emphasis omitted). In determining whether police conduct is the functional equivalent of interrogation, our supreme court has noted that,

> the court must focus on a suspect's perceptions and give relevance to the officer's constructive knowledge. Such considerations were required by the [Supreme Court's] direction [in ***Rhode Island v. Innis***, 446 U.S. 291, 301 (1980)] that the inquiry must look at the suspect's perceptions rather than the intent of the police. Moreover, a practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to an interrogation.

***Commonwealth v. Gaul***, 912 A.2d 252, 255 (Pa. 2006), ***cert. denied***, 552 U.S. 939 (2007) (internal quotation marks omitted). In conducting this inquiry, we are mindful of the fact that "not every statement made by an individual during a police encounter constitutes an interrogation." ***Commonwealth v. Page***, 59 A.3d 1118, 1131 (Pa.Super. 2013), ***appeal denied***, 80 A.3d 776 (Pa. 2013) (citation omitted).

In the instant matter, we agree with the trial court that appellant was not entitled to receive ***Miranda*** warnings prior to his statement regarding the firearm, as he was not subject to interrogation at the time this statement was made. (***See*** trial court opinion, 7/15/13 at 5.) Rather, the record reveals that appellant's repeated denial that there was a firearm in his room was made voluntarily and not in response to any questioning or

interrogation by police. This court has long recognized that "[v]olunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings." *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa.Super. 2008) (citation omitted).

Likewise, appellant's contention with regard to the statement he made about McClain is also without merit. The trial court credited "Trooper Belusko's testimony that he witnessed Corporal Candianis provide [appellant] with *Miranda* warnings before [appellant] made the statement about McClain." (Trial court opinion, 7/15/13 at 9; *see also* notes of testimony, 5/31/13 at 15-16.) "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony[,]" and we will not disturb the court's credibility determinations on appeal. *Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa.Super. 2007) (citation omitted). Accordingly, appellant's motion to suppress these statements was properly denied by the trial court.

Appellant's remaining claims concern the validity of the affidavit of probable cause upon which the search warrant issued for Room 268 was based. Appellant contends that the affidavit of probable cause did not set forth sufficient information within its four corners to provide the magistrate with a substantial basis for concluding that probable cause existed to issue said warrant. (Appellant's brief at 34-35, 40-45.)

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution mandate that search warrants must be supported by probable cause. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1031-1032 (Pa. 2012), *cert. denied*, 133 S.Ct. 1795 (2013).

> [T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the totality of the circumstances test articulated in *Commonwealth v. Gray*, [503 A.2d 921 (Pa. 1985)], and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information. The chronology established by the affidavit of probable cause must be evaluated according to a common sense determination.

*Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa.Super. 2013), *appeal denied*, 78 A.3d 1089 (Pa. 2013) (some citations and internal quotation marks omitted; citation formatting corrected).

Upon review, we conclude that the affidavit provided a substantial basis to support the issuing authority's finding of probable cause to search the hotel room in question. The affidavit of probable cause detailed the discovery of a firearm in Room 125 by hotel staff, the fact that Room 125 had been previously occupied by appellant, and that appellant had moved to Room 268. (Affidavit of probable cause, ¶¶ 2-4; certified record at 6.) The

affidavit further indicated appellant had returned to Room 125 prior to Trooper Belusko's arrival to retrieve something he had forgotten, and less than ten minutes after appellant re-entered Room 125, cleaning staff returned to the room and the firearm was no longer there. (*Id.* at ¶¶ 5-6.) Additionally, the affidavit indicated that Trooper Belusko obtained information that appellant had multiple felony convictions that prohibited him from possessing a firearm. (*Id.* at ¶¶ 7-8.) Based on the totality of the circumstances, we find that the affidavit in question provided probable cause to search Room 268.

Appellant further contends that the affidavit of probable cause relied on evidence that was illegally obtained during the trooper's initial warrantless entry into his hotel room to detain him. (Appellant's brief at 36-39.) The record belies this claim. As explained, the trooper's initial entry into appellant's hotel room was lawful, as there were exigent circumstances in this case sufficient to justify a warrantless entry. Moreover, as the trial court properly recognized, the troopers did not even gather any evidence or even search Room 268 when they entered the room to detain appellant. (Trial court opinion, 7/15/13 at 5, 13-14; *see also* notes of testimony, 5/31/13 at 14-15.) Accordingly, this claim must fail.

Lastly, appellant argues that the trial court erred in concluding that the independent source doctrine is applicable to the instant matter. (Appellant's brief at 48.) Our review of the record indicates that appellant did not raise

this specific issue in his Rule 1925(b) statement. Accordingly, we deem this issue waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in [an appellant's 1925(b)] Statement . . . are waived"); **see also Commonwealth v. Dozier**, 99 A.3d 106, 110 (Pa.Super. 2014), **appeal denied**, 104 A.3d 523 (Pa. 2014) (deeming appellant's issues waived for failure to present them in his Rule 1925(b) statement).

Accordingly, for all the foregoing reasons, we discern no error on the part of the trial court in denying appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2016

- 16 -